UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TUSK ENERGY SERVICES, LLC, <u>et al.</u>,[1] | ) | Case No. 16-51082 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS (1) AUTHORIZING AND APPROVING EMERGENCY POST-PETITION FINANCING; AND (2) PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, REPLACEMENT LIENS, AND OTHER RELIEF**

Tusk Energy Services, LLC, Tusk Subsea Services, LLC, Tusk Construction, LLC, and Rene Cross Construction, Inc. (collectively, the "<u>Debtors</u>"), as debtors and debtors in possession in the above-captioned cases, hereby file their Motion For Interim And Final Orders (1) Authorizing And Approving Emergency Post-Petition Financing; And (2) Providing Superpriority Administrative Expense Status, Replacement Liens, and Other Relief (the "<u>Motion</u>"). In support of this Motion, the Debtors refer to the Declaration of Kenneth Myers in Support of Chapter 11 Petition and First Day Pleadings (the "<u>Myers Declaration</u>") [Docket #__]. In further support hereof, the Debtors respectfully state:

**I.
JURISDICTION AND VENUE**

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Debtors confirm

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Tusk Energy Services, LLC (8903); Tusk Subsea Services, LLC (9064); Tusk Construction, LLC (9752), and Rene Cross Construction, Inc. (7838) The location of the Debtors' corporate headquarters and service address is: 211 Thru-way Park Rd., Broussard, LA 70518.

- 1 -

their consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue of this case and this Motion is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are sections 364 and 105, 362, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") and Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## II.
## INTRODUCTION AND SUMMARY OF RELIEF REQUESTED

4. The Debtors file this Motion for approval of an interim and final orders to approve a debtor in possession loan ("DIP Loan") under a post-petition secured credit facility ("Post-Petition Secured Credit Facility") in the total amount of $500,000 extended by Origin Bank (the Debtors' pre-petition secured lender), as well as for agreed use of cash collateral pursuant to the agreed Interim Budget and Final Budget (each as defined below). The debtor in possession financing facility and use of cash collateral will allow the Debtors to cover their necessary operating expenses and ensure continued normal business operations, to preserve and enhance the value of the Debtors' assets.

## III.
## BACKGROUND

5. On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy

Court for the Western District of Louisiana (the "Court") commencing the above-captioned chapter 11 cases. The factual background regarding the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in detail in the Myers Declaration, filed concurrently herewith and fully incorporated by reference.[2]

6. As set forth in the Myers Declaration, the Debtors are indebted to their pre-petition lender Origin Bank, as of the Petition Date, in the amount of approximately $5,002,572.47 in principal, plus accrued interest, pursuant to a secured credit facility ("Secured Credit Facility"). Origin Bank has security interests ("Pre-Petition Lender Liens") in substantially all of the Debtors' pre-petition equipment, receivables, and other assets (the "Pre-Petition Collateral").

7. The Debtors have continued in possession of their properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8. No trustee or examiner has been appointed in these chapter 11 cases, and no committees have yet been appointed or designated.

9. The Debtors have essentially two operating businesses: (i) a dredging and jetting services company, operating under the name of Tusk Subsea and operating through assets of Debtor Tusk Subsea Services, LLC ("Tusk Subsea"); and (ii) an inland marine construction business, operating under the name of Rene Cross Construction and operating through assets of Debtor Rene Cross Construction, Inc. ("Rene Cross Construction").

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Myers Declaration.

10. Prior to the Petition Date, the Debtors suffered from the effects of the overall severe slowdown in offshore oil and gas exploration and production activity in Louisiana and in other areas where the Debtors conduct business. The decline in the price of crude oil that began in mid-2014 and extending into 2016 has severely impacted exploration and production activities and demand for many of the Debtors' services.

11. Prior to the Petition Date, the Debtors reviewed their strategic options and determined that, in order to maximize the value of their businesses and assets for the benefit of creditors and their estates, the Debtors either (i) required additional liquidity, in the form of refinancing, additional loans, or additional equity contributions; or (ii) should pursue marketing and potential sale of the Debtors' businesses. In the period before the Petition Date, the Debtors pursued various options for additional liquidity, unfortunately without success. The Debtors also solicited expressions of interest from interested parties to purchase the business and assets of the Debtors, and two parties presented the Debtors with letters of intent in July, 2016.

12. Prior to the Petition Date, the Debtors experienced a liquidity crisis by which they required sufficient funding to continue to operate their businesses. Just prior to the Petition Date, the Debtors received certain short-term advances ("Pre-Petition Advances") from the Debtors' prepetition secured lender, Origin Bank. As of the Petition Date, the Debtors require additional post-petition advances and use of Origin Bank's cash collateral in order to continue operating the Debtors' businesses.

13. The Debtors anticipate that they will market their businesses and assets for sale during their chapter 11 cases, by working with the parties who have already expressed interest and soliciting further interest, with the goal of maximizing the value of the businesses and assets for the benefit of the creditors and the estates.

NO:0105949/00000:185355v1

# IV.
# RELIEF REQUESTED

14. By this Motion, the Debtors request authority to enter into the DIP Loan on an interim basis (and subject to the Final Hearing, on a final basis), by which Origin Bank, as DIP lender, will provide a postpetition loan to the Debtors up to a total amount of $500,000, provided, however, that the Debtors shall use the proceeds of the DIP Loan solely in compliance with the interim budget attached hereto as **Exhibit A** and incorporated herein by reference (the "Interim Budget"). Prior to the final hearing in this matter, the Debtors shall submit the final form of budget for the entire term of the DIP Loan ("Final Budget").

15. In addition to the request to enter into the DIP Loan, the Debtors have requested the use of cash collateral (as defined in section 363(a) of the Bankruptcy Code) constituting proceeds of accounts and revenues from operations of the Debtors' businesses in connection with the Chapter 11 Case (the "Cash Collateral"). Origin Bank, as the Debtors's pre-petition lender with security interests in substantially all of the Debtors' assets, does not consent to the use of its Cash Collateral, except upon the express terms of the Interim Order and Final Order. Without the use of Cash Collateral, it would disrupt the Debtors as a going concern, the value of the underlying assets would significantly decline, and would not be in the best interest of the Debtors, their estate, or their creditors.

16. The Debtors have determined that they are unable to obtain secured credit from sources other than Origin Bank that would be allowable under sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code for the purposes set forth in the Interim Order. Further, Origin Bank would not consent to any priming liens except as set forth in the Interim Order, asserting that the Debtors could not have provided adequate protection for any such proposed financing.

- 5 -

NO:0105949/00000:185355v1

16-51082 - #10  File 08/08/16  Enter 08/08/16 16:46:21  Main Document  Pg 5 of 14

17. Origin Bank has agreed to provide the requested DIP Loan and use of Cash Collateral in accordance with the terms contained in the Interim Order and Final Order, including in the amounts, categories and times set forth in the Interim Budget, which shall be used on an interim basis (and if approved in a Final Order, on a final basis under the Final Budget) for: (i) operational expenses of the Debtors and their businesses; and (ii) other costs and expenses of administration of these Chapter 11 cases.

18. Without the DIP Loan and use of Cash Collateral, the Debtors will be unable to pay its necessary payroll and other operating expenses, and operate the Debtors' businesses as a going concern in a manner that will avoid irreparable harm to the Debtors' estates.

19. Origin Bank has indicated its willingness to provide the DIP Loan and allow the use of Cash Collateral, subject to the terms and conditions set forth in the Interim Order and Final Order. Origin Bank's lending of the DIP Loan is conditioned upon the grant of postpetition liens that will constitute a first priority lien in all postpetition assets of the Debtors (including without limitation receivables), subject only to the Carve-Out (as defined below).

20. The terms of the DIP Loan and use of Cash Collateral have been negotiated in good faith and at arm's length among the Debtors and Origin Bank. The terms of the DIP Loan are at least as favorable to the Debtors as those available from alternative sources, under all of the circumstances. Given the current market conditions and under the particular circumstances of theses Chapter 11 cases, there are no other sources of funding. Given the exigencies of the case, the Debtors believe the DIP Loan is the best and only option.

21. The terms for the proposed DIP Loan and use of Cash Collateral are set forth in the Interim Order and the principal terms are summarized as follows:[3]

---

[3] To the extent the following summaries and descriptions in the Motion conflict with the express provisions of the Interim Order, the Interim Order shall control.

| | |
|---|---|
| Borrowers: | Tusk Energy Services, LLC, Tusk Subsea Services, LLC, Tusk Construction, LLC, and Rene Cross Construction, Inc. |
| Lender: | Origin Bank |
| DIP Loan: | A debtor-in-possession financing loan, in the interim amount of $100,000 and total amount of up to $500,000 (inclusive of Pre-Petition Advances) subject to entry of a Final Order, subject to the Interim Budget and Final Budget.<br><br>Origin Bank shall have the right to sweep daily the Debtors' operating accounts to pay down the DIP Loan. Funds shall be accounted for through due to/due from entries on the books of the Debtors and the "sweeps" can be maintained so that the "sweeps" generate either a pay-down on the DIP Loan or a draw against the DIP Loan, depending upon the amount of checks outstanding against the cash deposits from operations into the operating accounts.<br><br>To be clear, Origin Bank is not obligated to fund payments to creditors for prepetition debts absent an order of the Court approving such payments including payments to "critical vendors". |
| Use of Proceeds: | DIP Loan proceeds shall be used exclusively for (i) the necessary business operations in the amounts and categories and time set forth in the Budget; and (ii) other costs and expenses of administration of the Chapter 11 Case as set forth in the Budget. |
| Use of Cash Collateral: | The Debtors' use of Cash Collateral shall be solely as set forth in the Budget and as otherwise provided in the Interim Order and Final Order for: (i) the necessary business operations in the amounts and categories and time set forth in the Budget; and (ii) other costs and expenses of administration of the Chapter 11 Case as set forth in the Budget. |
| Interest and Fees: | The DIP Loan under the Interim Order and Final Order shall accrue interest at the same rate as set forth in the pre-petition Secured Credit Facility (rate of Prime plus 1% per annum). Upon the occurrence of an Event of Default, the DIP Loan shall accrue interest at a default rate of interest equal to 2% over such rate and such interest will be payable on demand. |
| Maturity Date: | The earliest to occur of the following: (i) the occurrence of an Event of Default; and (ii) November 30, 2016. |

NO:0105949/00000:185355v1

| | |
|---|---|
| Adequate Protection / Security and Priority to Origin Bank for DIP Loan: | Post-petition replacement "Post-Petition Lender Liens" (to the extent of any diminution) on post-petition generated property that would otherwise be defined as Pre-Petition Collateral under the existing or future Secured Credit Facility and upon all "Post-Petition Collateral" (consisting of all currently owned or hereafter acquired property and assets of the Debtors of any kind or nature, excluding Avoidance Actions), with such Post-Petition Collateral as well to be Collateral for post-petition advances under any line of credit, in accordance with the Post-Petition Secured Credit Facility, granted pursuant to Bankruptcy Code sections 364(c)(2), (c)(3) and (d).<br><br>Origin Bank is hereby granted a super-priority administrative claim ("Super-Priority Claim") under 11 U.S.C. § 364(c)(1) to the extent the Pre-Petition Collateral and the Post-Petition Collateral are insufficient to cover the amounts due under Secured Credit Facility and the Post-Petition Secured Credit Facility. Further, the super priority claim afforded to Origin Bank is also granted pursuant to Bankruptcy Code section 364(c)(1), is in priority over all other unpaid administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code (subject only to Carve-Out). The Lender Liens and Super priority Claim granted Origin Bank is subject only to the Carve-Out.<br><br>The Debtors shall provide Origin Bank with information relating to projected revenues and expenses, actual revenue and expenses, and variances from the Interim Budget and Final Budget, as applicable, as well as reasonable access to, among other things, the Company's management, books, and records, and will provide the reporting required under the Secured Credit Facility. |
| Carve Out: | "Carve Out" is defined as $75,000 for the sole benefit of the estate professionals (to the extent of any unpaid amounts set forth in the Budget at the time of a Termination Event, and subject to approval by the Court), and (b) the payment of fees pursuant to 28 U.S.C. § 1930 which "Carve Out" may be paid from cash collateral but not from the proceeds from the DIP Loan nor may the DIP Loan be drawn on to pay any "Carve Out." |

| | |
|---|---|
| <u>Other:</u> | The Debtor shall be authorized to use the Secured Credit Facility as the Post-Petition Secured Credit Facility, in light of and consistent with the willingness of Origin Bank to allow the Debtors to maintain the DIP Loan and to limited forbearance only as set forth below from enforcing its rights against the Debtors (with Origin Bank waiving no rights but maintaining all rights under any notice of default issued to the Debtors, to reiterate such default in the event of other default(s) by the Debtors).<br><br>The Debtors and Origin Bank agree, that even if the DIP Loan and Post-Petition Secured Credit Facility provide otherwise, the Company will only fund transactions with prior funding through draws under the DIP Loan and/or through deposits in the Debtors' Origin Bank accounts. Further, the Debtors and Origin Bank agree that Origin Bank is under no obligation, regardless of any item(s) contained in any Budget or past practices, to fund overdrafts or directly or indirectly fund sums due to any governmental entity or agency for taxes.<br><br>Under the Post-Petition Secured Credit Facility, the Debtors will maintain any current sweep account structure, funding will be opened up through the current DIP Loan, and the funding under the DIP Loan post-petition will be secured by any and all post-petition generated property that would fall into the definition/description of collateral under the Secured Credit Facility, the current system of due to/due from accounting entries will be used to maintain the accurate balances. Origin Bank will forbear from exercising its rights under any notice of default resulting from the Debtors' defaults or the filing of this Case, against any Debtors unless and until there is a post-petition default by the Debtors (with Origin Bank waiving no rights but maintaining all rights under any notice of default, to reiterate any such default in the event of other default(s) by the Debtors if any there be). Origin Bank will be authorized to apply any swept funds to the outstanding DIP Loan balance on a daily basis, including the amount due as of the commencement of this Case, thereby creating more availability under the Line of Credit, and neither the Motion nor the Interim Order or Final Order will affect the liability of any guarantor under any guaranty agreement. All reporting and other requirements under the Secured Credit Facility will be maintained.<br><br>All funds received from collateral or its proceeds, including but not limited to accounts receivable, shall be deposited in the debtor's Debtor in Possession Operating Account which account shall be kept at Origin Bank.<br><br>All rights and security interests, privileges, defenses, or rights created in favor of banks or financial institutions by any Louisiana law, including but not limited to title 6 of the Louisiana Revised Statutes, are hereby recognized and deemed applicable to Origin Bank. |

9

| | |
|---|---|
| Events of Default: | Events of default under the Secured Credit Facility and the DIP Loan ("Events of Default") shall include (i) the appointment of a trustee in this Case, (ii) the dismissal of this Case or conversion of this Case to one under chapter 7, (iii) the making by the Company of any distributions to shareholders, members, or equity, on account of their ownership for any reason, including without limitation, the payment of income taxes without the written consent of Origin and approval by this Court; and (iv) any event of default under the Secured Credit Facility other than pre petition defaults and this Case. |
| Release: | The Interim Order and Final Order shall approve the release by the Debtors of any and all claims against Origin Bank relating to the Secured Credit Facility or the Pre-Petition Security Interest or Lien, or the Pre-Petition Collateral and that the deadline for any other party to make any such claim against Origin Bank shall be and is hereby fixed at August 21, 2016. Any such claim shall be taken up at the Final Hearing. |

# V.
# BASIS FOR RELIEF REQUESTED

22. Pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code, the Debtors request that the Court authorize the Debtors to enter into the DIP Loan as set forth in the Interim Order and Final Order, which will provide for emergency funds necessary for the preservation and maintenance of the Debtors' assets and businesses, including to provide for payroll, insurance, and other basic operating expenses, all subject to the Budget.

23. In evaluating whether to approve the DIP Loan, Courts consider whether the debtors are able to obtain unsecured credit, whether the transaction is necessary to preserve the value of the estate, and whether the terms are fair and reasonable under the circumstances. *E.g., In re Los Angeles Dodgers, LLC*, 457 B.R. 308, 312-12 (Bankr. D. Del. 2011).

24. The Debtors have determined that they are unable to obtain financing in another manner, or on any terms superior to those in the Interim Order and Final Order. The Debtors

submit that obtaining the Interim Order and Final Order is necessary to preserve the value of the Debtors' businesses and maximize the value of the assets and businesses to allow for an orderly marketing and sale process.

25. The Debtors request the Court enter the Interim Order as soon as practicable to allow the Debtors access to the funds necessary to cover operational expenses; and that the Court schedule a Final Hearing on the matter with notice to creditors. Without the DIP Loan, the Debtors will be unable to pay its necessary payroll and other operating expenses, and obtain goods and services needed to preserve and operate the Debtors' businesses in a manner that will avoid irreparable harm to the Debtors' estates.

26. The terms of the DIP Loan have been negotiated in good faith and at arm's length among the Debtors and Origin Bank. The terms of the DIP Loan are more favorable to the Debtors than those available (if any) from alternative sources, under all of the circumstances. Given the current market conditions and under the particular circumstances of the Chapter 11 Case, there are no other sources of funding. Given the exigencies of the case, the Debtors believe the DIP Loan is the best and only option.

27. Regarding use of Cash Collateral, the Debtors' use of property of their estates, including the Cash Collateral, is governed by section 363 of the Bankruptcy Code. Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may not use cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

28. It is essential to the Debtors' successful reorganization and the going concern

value of their businesses that they have sufficient funds to operate in the ordinary course, and at a level that is on par with their prepetition performance. Absent the use of Cash Collateral (in conjunction with the DIP Facility), the Debtors will not have sufficient working capital to (a) make payments to employees, vendors, or suppliers, (b) satisfy ordinary operating costs, and (c) fund the administrative costs of these chapter 11 cases. Accordingly, the Debtors submit that the use of Cash Collateral under the terms set forth herein and in the Interim and Final Order, is in the best interests of the Debtors' estates and should be approved.

29. Pursuant to section 363(c) of the Bankruptcy Code, the Debtors may only use Cash Collateral, either subject to the consent of Origin Bank or the grant of adequate protection. 11 U.S.C. § 363(c)(2). Section 363(e) of the Bankruptcy Code provides that upon request of an entity that has an interest in property to be used by a debtor, the court shall prohibit or condition such use as is necessary to provide adequate protection of such interest. 11 U.S.C. § 363(e).

30. Origin Bank has agreed to consent to the use of Cash Collateral, but only under the terms set forth above including adequate protection as set forth above. The Debtors submit that such terms are reasonable and should be approved.

31. The Interim and Final Orders submitted include language specifically stating that the terms of Cash Collateral use include all amounts requested under the other "first day" motions.

## VI.
## NOTICE

32. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) those persons who have formally appeared and requested notice of service in this

proceeding pursuant to Bankruptcy Rules 2002 and 3017; (iii) counsel for and the members of any committees appointed by this Court; (iv) Origin Bank through its counsel; (v) the parties with a direct interest in each specific First Day Motion; and (vi) governmental agencies having a regulatory or statutory interest in these cases. In light of the nature of the relief requested, and the exigent circumstances of these cases, the Debtors submit that no further notice is necessary.

## VII.
## NO PRIOR REQUEST

33. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court: (i) enter an Order, in substantially the same form as that attached as Exhibit B, granting the relief requested herein; (ii) schedule a final hearing on the Motion as soon as practicable; and (iii) provide such other relief as the Court deems appropriate and just.

Dated: August 8, 2016

Respectfully Submitted,

By: */s/ C. Davin Boldissar*
C. Davin Boldissar (La. #29094)
Bradley C. Knapp (La. #35867)
Locke Lord LLP
601 Poydras Street, Suite 2660
New Orleans, Louisiana 70130-6036
Telephone: (504) 558-5100
Fax: (504) 558-5200

and

Alan H. Katz (La. #07644; N.Y. #5134580)
Locke Lord LLP
3 World Financial Center, 20th Floor
New York, New York 10281
Telephone: (212) 415-8509
Fax: (212) 812-8380

NO:0105949/00000:185355v1

16-51082 - #10  File 08/08/16  Enter 08/08/16 16:46:21  Main Document  Pg 13 of 14

- 14 -

                                        **ATTORNEYS FOR TUSK ENERGY SERVICES, LLC, TUSK SUBSEA SERVICES, LLC, TUSK CONSTRUCTION, LLC, AND RENE CROSS CONSTRUCTION, INC.**